# IN THE COURT OF APPEALS OF IOWA

No. 19-1169
Filed November 27, 2019

**IN THE INTEREST OF P.R.,**
**Minor Child,**

**C.B., Mother,**
        Appellant,

**A.R., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Sarah Wenke, Ottumwa, for appellant mother.

Ryan J. Mitchell of Orsborn, Milani, Mitchell, Goedken, Larson & Cox, P.C., Ottumwa, for appellant father.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Robert Breckenridge of Breckenridge Law, P.C., Ottumwa, guardian ad litem for minor child.

Considered by Doyle, P.J., May, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Senior Judge.**

The mother and father of P.R., born July 2015, separately appeal the termination of their parental rights. Because we agree with the district court that neither parent has the ability to care safely for the child and termination is in the child's best interests, we affirm.

This family returned[1] to the attention of DHS in September 2016, when the parents' infant daughter died after being found unresponsive. While the cause of death was undetermined, P.R.'s safety was also at risk due to the unsanitary conditions of the home and the intellectual disabilities of the parents. The juvenile court placed P.R. in a foster home, where he remained throughout these proceedings.

After more than two and one-half years of offered services, the State filed a petition to terminate parental rights, which came on for hearing on April 12, continuing on May 6 and May 14, 2019. By order dated July 3, the court terminated both parents' rights under Iowa Code section 232.116(1)(h) (2019). We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

Under Iowa Code section 232.116(1)(h), termination is warranted if,

> The court finds that all of the following have occurred:
>     (1) The child is three years of age or younger.
>     (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>     (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

[1] This family initially came to the attention of the Iowa Department of Human Services (DHS) in 2015, due to the parents' intellectual disabilities. The parents were unable to feed P.R., and the mother believed that the seven-day old infant was actually four months of age. After an August 2015 adjudication and receipt of intense services, the juvenile court dismissed that case in December 2015.

or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Although they frame their appeals slightly differently, both parents appear to only take issue with whether the State proved section 232.116(1)(h)(4) by clear and convincing evidence. To undergird their arguments, they both assert DHS did not make reasonable efforts to reunite them with P.R. The Iowa Code requires the State to make reasonable efforts to reunify a family as quickly as possible after a removal. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). However, the State must show its reasonable reunification efforts not as a strict substantive requirement of termination, but as a part of its ultimate proof the child cannot be returned safely to the care of a parent. *See id.*

The October 15, 2018 permanency review order referenced the various services offered to the parents but also noted:

Clearly, the department could proceed with termination of parental rights, but the purpose of the long delay since the last hearing was to obtain an assessment of the parents' ability to engage in and supervise [P.R.]. Now that the assessment has been obtained there is some evidence the departments' efforts to assist the parents in achieving reunification have been less than robust. [P.R.] is currently in a safe and nurturing foster home, and while he's been in placement for two years it would not be unreasonable to provide the parents a few more months of services in line with what is recommended in [the] assessment.

A review hearing was set for January 11, 2019, but things did not progress well. When overnight visits were permitted, P.R. would come to preschool wearing dirty clothes and emitting an unbathed stench. The parents were also unaware of their own hygiene needs and observed to be unbathed and wearing the same dirty

clothes for days. To transport P.R. to preschool and daycare, DHS provided a transportation service to aid the parents. But the parents were unable to use the service as repeatedly instructed. They were also repeatedly told that the maternal grandfather was not allowed to transport P.R. because his vehicle was unsafe for the child. Nonetheless, the parents continued to bypass the safety plan, leading to a discontinuation of overnight visits and a return to semi-supervised visits with P.R. in January 2019. The record is replete with detailed reports showing that DHS tailored the services offered appropriately. Unfortunately, neither parent was capable of providing even the most basic care to P.R. without continued reminders and prompting. We therefore agree with the district court that the statutory grounds for termination under Iowa Code section 232.116(1)(h) were proven by clear and convincing evidence as to both parents.

Both parents also assert termination of their parental rights is not in P.R.'s best interests and their bond with P.R. should impede termination. *See* Iowa Code § 232.116(2), (3)(c). The district court focused on P.R.'s safety and security, concluding that it would be in his best interests to have the mother's and father's parental rights terminated. We agree. P.R. deserves to be in a safe and secure environment, which neither his mother nor his father could provide. *See id.* § 232.116(2) (requiring courts to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"); *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (noting the legislature has identified "a child's safety and . . . need for a permanent home as the defining elements in a child's best interests" (citation omitted)). As to any parental bond that may impede

termination, we note the record indicates both parents shared a bond with P.R., although it was strained as time went on.  The mother appeared to share a stronger bond with P.R., as she was observed making greater attempts to play with P.R. during visits while the father was often in the background and described by the DHS worker as "a pretty stand-off parent."  We agree with the district court that the evidence does not support a finding that P.R. would be disadvantaged by the termination such that it would outweigh the parents' inability to provide for P.R. *See In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs.").

We affirm the termination of the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**